UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY COOOPER; aka SIDNEY COOPER, CDCR #H-58566,<br><br>                              Plaintiff,<br><br>vs.<br><br>DANIEL PARAMO; MARCUS POLLARD; D. McGUIRE; T. GIURBINO; T.T. DELGADO; CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION,<br><br>                              Defendants. | Case No.: 3:20-cv01342-AJB-NLS<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**2) GRANTING MOTION TO EXCEED PAGE LIMITS [ECF No. 3];**<br><br>**AND**<br><br>**3) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) & 28 U.S.C. § 1915A(b)** |

Sydney Cooper, also known as Sidney Cooper, ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (*See* Compl., ECF No. 1).

/ / /

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when he filed his Complaint; instead, he filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).  Plaintiff has also filed a Motion to Exceed Pages Limits (ECF No. 3) which the Court GRANTS.

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S.  __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at Richard J. Donovan Correctional Facility ("RJD"), where he was formerly incarcerated. *See* ECF No. 3 at 1-4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff has carried an average monthly balance of $137.25 and had $135.53 in average monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint, along with an available balance of $140.16 on the books at the time of filing. (*See* ECF No. 3 at 1, 3.) Based on this accounting, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $27.45 pursuant to 28 U.S.C. § 1915(b)(1).

The Court will direct the Secretary of the CDCR, or his designee, to collect the initial $27.45 fee assessed only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II.    Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

    A.    <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these

statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.  Plaintiff's Factual Allegations

From August 4, 2015 to "the year 2019," Plaintiff alleges Defendant Paramo, former RJD Warden, "refus[ed] to properly process numerous 'staff complaints' against his subordinates." (Compl. at 3.) Plaintiff claims Paramo refused to process grievances

regarding "complaints of unlawful acts of both 'theft and the filing of false police reports,'" as well as "unlawful and unconstitutional acts of 'repetitive retaliation'" in order to "chill and silence the Plaintiff's voice." (*Id.*) Plaintiff further alleges Paramo "repeatedly 'condoned and ratified' such acts of 'staff misconduct' that caused Plaintiff to suffer 'irreparable injury' on numerous occasions." (*Id.*)

From February 23, 2019 to "the current date," Plaintiff alleges Defendant Pollard, current RJD Warden, "refus[ed] to properly process the Plaintiff's 'staff complaint'" against RJD Law Librarian Tiscornia. (*Id.* at 4.) Instead, Plaintiff claims Pollard decided to have the staff complaint "improperly processed as a 'regular appeal.'" (*Id.*) Plaintiff further alleges Pollard denied his complaint, "siding with [Tiscornia] that she was not the cause of the Plaintiff's appeal." (*Id.*)

On August 4, 2015, Defendant Delgado "questioned Plaintiff as to whether or not his cellmate had a cellphone (contraband)." (*Id.* at 5.) Plaintiff informed Delgado that he was "under no obligation to provide this type of 'personal information' and that should he continue to question him about such inappropriate issues, that he'd be filing a grievance against him." (*Id.*) Plaintiff claims Delgado "unlawfully and unconstitutionally retaliated against Plaintiff by searching his cell" and "stealing" his radio. (*Id.*) When Plaintiff and his cellmate returned to his cell, Plaintiff alleges that they found their cell had been "thoroughly rummaged, legal work and personal property all over the place" and missing personal property. (*Id.*)

On February 18, 2020, Plaintiff "submitted a 602 appeal objecting and complaining about Litigation Coordinator I. Giurbino's blatant refusal" to allow Plaintiff phone calls to schedule hearings for his motions or to allow Plaintiff phone access to "attend and make court appearance on his hearing dates." (*Id.* at 8.)

On October 31, 2017, Plaintiff claims his counselor, Mr. Zavala, "refused to permit him the opportunity to make a 'court call' to the Court to schedule a hearing date." (*Id.* at 9.) Plaintiff alleges Zavala told him that Defendant McGuire, RJD Litigation Coordinator, told him to "stop allowing Plaintiff access to calls to the court" in "collusion

with corrupt officers to obstruct justice and stop Plaintiff's continued attempt to prosecute them." (*Id.*)

On August 10, 2015, Plaintiff alleges Sergeant Scharr responded to Plaintiff's "inmate request for interview, falsely stating 'you did receive a property receipt.'" (*Id.* at 10.) Plaintiff claims his missing radio was not on his "property card" even though it had been "turned over" to "receiving and releasing." (*Id.*) Plaintiff claims this was a "blatantly false document" that was "prepared and presented" by Scharr in an "effort to assist" Delgado to "cover up the act of theft that [Delgado] had committed upon Plaintiff's personal property." (*Id.*)

Plaintiff claims Sergeant Godinez "stood by and allowed Officer Romero to call Plaintiff a "bitch" in an "effort to instigate a fight" between Romero and Plaintiff. (*Id.* at 11.) Plaintiff alleges Godinez also "condoned and ratified" Romero's actions in "threatening, intimidating, and coercing the Plaintiff with moving forward with his judicial level of review." (*Id.*) Plaintiff claims Godinez and Romero told him to "shut that shit down or we're gonna do this to you every day." (*Id.*) Plaintiff alleges he brought these "serious issues to the attention of the San Diego Superior Court without any type of remedies, or protections ever being provided by the Court." (*Id.*)

On July 6, 2017, Sergeant Wall "interviewed the Plaintiff regarding the 'theft' committed by Officer Romero." (*Id.* at 12.) Plaintiff alleges Wall "committed numerous felonies by preparing and producing false documentary evidence in an effort to illegally 'cover up' the allegation of 'theft' committed by [Romero]" on May 4, 2017. (*Id.*)

On October 2, 2017, Zavala told Plaintiff that he was going to be transferred to Salinas Valley State Prison ("SVSP"). (*See id.* at 13.) Plaintiff claims that this a result of unnamed "state employees" who purportedly "attempted to manipulate the Plaintiff's medical records." (*Id.*) Plaintiff claims that "his original diagnosis" of his medical condition "had been changed" resulting in the transfer to SVSP. (*Id.*) However, once he demonstrated to Zavala that his "condition had been changed," Plaintiff was "removed from the transfer list." (*Id.*)

On July 7, 2017, Romero "stopped the Plaintiff" and "called him a 'bitch' in an effort to instigate a fight between [Romero] and Plaintiff." (*Id.* at 14.) Plaintiff also claims Romero "cut the shoestrings" out of his shoes and told him that "should the Plaintiff choose to 'resist' that he may get 'hurt'." (*Id.*) Plaintiff alleges Romero "interrogated the Plaintiff" and was "threatened by [Romero]" who told him to "shut that shit down or we'll do you like this every day." (*Id.*) Plaintiff was "out to the hospital" on May 4, 2017 when Romero allegedly "took it upon himself to illegally search the Plaintiff's cell stealing" Plaintiff's personal property. (*Id.* at 15.) Plaintiff alleges Romero has "always been known as a corrupt and controversial correctional officer." (*Id.*) On February 10, 2017, Plaintiff claims he was the "victim of a repeated act of theft" where Officer Rodriguez "camouflaged an institutional search to once again 'steal' the Plaintiff's personal property" for filing administrative grievances. (*Id.* at 16.) In order to "legitimize the theft," Plaintiff claims Rodriquez "falsely claimed that some of the 'stolen' appliances" did not belong to Plaintiff. (*Id.*) However, Plaintiff alleges he was able to provide invoices to "establish" he had purchased the items. (*Id.*)

Plaintiff seeks injunctive relief, "$100,000s," in compensatory damages, "$100,000 in punitive damages," and "replacement of the 'stolen Super 3 radio and all other personal property 'stolen' for exercising protected conduct." (*Id.* at 7.)

C.    42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

D.  Grievance procedures

Plaintiff claims that Defendant Paramo, the former RJD Warden, "refus[ed] to properly process numerous 'staff complaints' against his subordinates" and refused to process grievances regarding "complaints of unlawful acts of both 'theft and the filing of false police reports.'" (Compl. at 3.)  As to the current RJD Warden, Defendant Pollard, Plaintiff alleges that Pollard "improperly processed" his grievance against Law Librarian Tiscornia.  (*Id.* at 4.)

The Court finds Plaintiff's Complaint fails to state a claim as to either former Warden Paramo or current Warden Pollard's failure to properly process grievances because an official's allegedly improper processing of a prisoner's grievances or appeals, without more, does not serve as a sufficient basis for section 1983 liability. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. California Department of Corrections and Rehabilitation*, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of […] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed § 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860).

For these reasons, the Court finds Plaintiff's conclusory claims against Defendants Paramo and Pollard are insufficient to state any plausible due process claim upon which § 1983 relief may be granted. *See Iqbal*, 556 U.S. at 678-79 (citations omitted).

E.  Statute of Limitations

Plaintiff's claims against Defendants Delgado and Scharr arose in 2015.  (*See* Compl. at 5, 10.)  "A claim may be dismissed [for failing to state a claim] on the ground

that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000)  (court may raise the defense of statute of limitations sua sponte), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 (9th Cir. 2011) (en banc); *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B) of prisoner's time-barred complaint).

Because section 1983 contains no specific statute of limitation, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Before 2003, California's statute of limitations was one year. *Jones*, 393 F.3d at 927. Effective January 1, 2003, the limitations period was extended to two. *Id.* (citing Cal. Civ. Proc. Code § 335.1). The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989)); *Jones*, 393 F.3d at 927 (noting that in actions where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law).

Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for two years. Cal. Civ. Proc. Code § 352.1(a); *Johnson v. California*,

207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005). Accordingly, the effective statute of limitations for most California prisoners is three years for claims accruing before January 1, 2003 (one year limitations period plus two year statutory tolling), and four years for claims accruing thereafter (two year limitations period plus two years statutory tolling). In addition, the limitations period for prisoners is tolled while the "prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *Hardin*, 490 U.S. at 543-44 (federal law governs when a § 1983 cause of action accrues). "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391. Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

Thus, assuming Plaintiff is not serving a life sentence, he is entitled to an additional two (2) years of statutory tolling pursuant to Cal. Civ. Proc. Code § 352.1(a). *Johnson*, 207 F.3d at 654; *see also Jones*, 393 F.3d at 928 n.5 (noting that "California courts have read out if the statute the qualification that the period of incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling."). Here, Plaintiff's claims against Delgado and Scharr accrued in 2015 and he should have filed this action against them in 2019. (*See* Compl. at 5, 10.) Consequently, based on the face of Plaintiff's own pleading, it is clear Plaintiff's claims against Delgado and Scharr fall outside California's two-year statute of limitations, even including all presumed periods of tolling provided by statute. *See Wallace*, 591 U.S. at 391; *Maldonado*, 370 F.3d at 955; Cal. Code Civ. Proc. § 335.1 (tolling statute of limitations "for a maximum of 2 years" during a prisoner's incarceration).

Finally, Plaintiff's claims could be considered timely if, in his Complaint, he alleges facts sufficient to show the limitations period may be *equitably* tolled. *See Cervantes*, 5 F.3d at 1276-77. Generally, federal courts also apply the forum state's law regarding equitable tolling. *Fink*, 192 F.3d at 914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir.1988). Under California law, however, Plaintiff must meet three conditions to equitably toll the statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) Defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 316-17 (Cal. 1978); *Fink*, 192 F.3d at 916. As currently pleaded, however, the Court finds Plaintiff has failed to plead any facts which, if proved, would support any plausible claim for equitable tolling. *See Cervantes*, 5 F.3d at 1277; *Iqbal*, 556 U.S. at 679; *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (plaintiff carries the burden to plead facts which would give rise to equitable tolling); *see also Kleinhammer v. City of Paso Robles*, 385 Fed. Appx. 642, 643 (9th Cir. 2010).

Accordingly, the Court finds the running of the statute of limitations is apparent on the face of Plaintiff's Complaint as to the claims against Delgado and Scharr, and therefore he has failed to state a claim against them upon which section 1983 relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1).

F.  Access to Courts

Plaintiff also claims that Defendant Zavala "refused to permit him the opportunity to make a 'court call' to the Court to schedule a hearing date." (Compl. at 9.) Plaintiff also alleges that Defendant Giurbino refused to allow Plaintiff to make phone calls to schedule hearings or allow Plaintiff phone access to "attend and make court appearances on his hearing dates." (*Id.* at 8.) Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for

denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.").

However, Plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. *Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Harbury*, 536 U.S. at 413-14. The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

Here, Plaintiff fails to allege the actual injury required to state an access to courts claim. *See Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. Thus, the Court finds that Plaintiff's Complaint fails to include any "factual matter" to show how or why any of the individual Defendant in this case caused him to suffer any "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any case. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; *Iqbal*, 556 U.S. at 678.

Thus, because Plaintiff has failed to allege facts sufficient to show that any named Defendant caused him to suffer any "actual injury" with respect to any non-frivolous direct criminal appeal, habeas petition, or civil rights action he may have filed, *see Lewis*, 518 U.S. at 354, the Court finds Plaintiff's access to courts claims must be dismissed for failing to state a claim upon which § 1983 relief can be granted.

G. Property claims

Throughout his Complaint, Plaintiff alleges Defendants searched his cell on more than one occasion and either removed or destroyed his personal property. (*See* Compl. at 5, 9, 15.) Where a prisoner alleges he was deprived of a property interest caused by the unauthorized acts of state officials, either negligent or intentional, he cannot state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that the unauthorized negligent or intentional deprivation of property does not violate due process if a meaningful post-deprivation remedy is available). The California Tort Claims Act ("CTCA") provides an adequate post-deprivation state remedy for the random and unauthorized taking of property. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) ("California law provides an adequate post-deprivation remedy for any property deprivations.") Thus, to the extent Plaintiff challenges the unauthorized or negligent taking of his personal property in contravention of a statute or regulation authorizing it, the CTCA provides him with an adequate state post-deprivation remedy, and his substantive and procedural due process claims challenging the loss of his property is not cognizable in a § 1983 action.

H. Rooker Feldman

Finally, Plaintiff alleges that he has filed an action in the San Diego Superior Court raising the same claims as those he has brought in this action. (*See* Compl. at 11.) Plaintiff claims that he has brought these "serious issues to the attention of the San Diego Superior Court without any type of remedies, or protections ever being provided by the [San Diego Superior Court]." (*Id.*)

The *Rooker-Feldman* doctrine provides that "'a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)), *cert. denied*, 119 S.Ct. 868 (1999); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 & 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

Review of state court decisions may only be conducted in the United States Supreme Court. *Feldman*, 460 U.S. at 476 & 486; *Rooker*, 263 U.S. at 416; *see* 28 U.S.C. § 1257. The *Rooker-Feldman* jurisdictional bar applies even if the complaint raises federal constitutional issues. *Feldman*, 460 U.S. at 483 n.16 & 486; *Henrichs v. Valley View Development*, 474 F.3d 609, 613 (9th Cir. 2007). More specifically, the bar applies if the challenge to the state court decision is brought as a § 1983 civil rights action. *See Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995), *overruled on other grounds recognized by Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017); *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.4 (9th Cir. 1986).

A complaint challenges a state court decision if the constitutional claims presented to the district court are "inextricably intertwined" with the state court's decision in a judicial proceeding. *Feldman*, 460 U.S. at 483 n.16. "[T]he federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *see also Worldwide Church of God*, 805 F.2d at 891-92.

Because Plaintiff appears to seek this Court's assistance in overturning orders made by state court judges based on the same claims brought in this action, his claims are inextricably intertwined with the state court proceedings and are barred by the *Rooker-Feldman* doctrine.

## IV. Conclusion and Order

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $27.45 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **GRANTS** Plaintiff's Motion to Exceed Page Limits (ECF No. 3).

5. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **GRANTS** him sixty (60) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to

state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

      6.    The Clerk of Court is directed to mail Plaintiff a court approved civil rights complaint form.

**IT IS SO ORDERED**.

Dated: July 28, 2020

Hon. Anthony J. Battaglia
United States District Judge